UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
DEBORAH SCROGGINS,                                                :
                                                                  :    15 Civ. 9524 (PAE)
                                    Plaintiff,                    :
                                                                  :    OPINION & ORDER
                -v-                                               :
                                                                  :
RENEE SCROGGINS, FIRE RECORDS/CONEXION                            :
MEDIA, UNIVERSAL MUSIC GROUP, and ASCAP,                          :
                                                                  :
                                    Defendants.                   :
                                                                  :
------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

This decision resolves a *pro se* plaintiff's challenge to the use of intellectual property associated with recordings and compositions by the funk band "ESG." Plaintiff Deborah Scroggins ("Scroggins") formed that band with her sisters in the early 1980s. She brings claims for copyright infringement, fraud, theft, defamation, and infliction of emotional distress against her sister Renee Scroggins, Conexion Media Group, Inc. ("Conexion"), Universal Music Group ("UMG"), Fire Records of London ("Fire Records"), and the American Society of Composers, Authors, and Publishers ("ASCAP"). Scroggins claims that, in various ways, each defendant unlawfully exploited recordings and compositions of works she co-authored, did not compensate her for this use, and caused her emotional distress.

Renee Scroggins, Conexion, Fire Records, and ASCAP each move to dismiss Scroggins's Complaint for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), and/or failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6). UMG moves for judgment on the pleadings, *see* Fed. R. Civ. P. 12(c). For the reasons that follow, the Court grants each motion and dismisses all of Scroggins's claims.

I.  **Background**[1]

    A.  **Factual Background**

Along with her sisters Renee Scroggins ("Renee") and Valerie Scroggins ("Valerie"), Scroggins, in the 1970s, formed the funk band ESG. *See* Complaint ¶ 3. In or around 1980, ESG recorded three albums: (1) an EP (extended-play) album that contained six songs, including the song "UFO" (the "EP Album"), (2) a disco album that contained three songs (the "Disco Album"), and (3) an LP (long-play) album that contained 11 songs (the "LP Album"). *Id.* ¶ 4. In 1987 or 1988, Scroggins left ESG. *Id.* ¶ 6. In 2006, she claims, she discovered she had been "left off" the original copyright registration—filed by Renee—of six songs from the EP Album that Scroggins allegedly "co-wrote and performed." *Id.* ¶ 8. Scroggins then filed a duplicate registration for those songs, naming herself, Renee and Valerie as joint authors of the works. *Id.*

In 2009, Scroggins, proceeding *pro se*, filed a lawsuit in United States District Court for the Eastern District of New York against Renee, Valerie, and their record label, Soul Jazz. *See id.*, ¶ 9. Her complaint there, Dkt. 27, Ex. B ("EDNY Complaint") alleged almost verbatim the allegations here. On October 25, 2012, after court-ordered mediation, Scroggins and her sisters entered into a written settlement agreement, Dkt. 27, Ex. C (the "Agreement" or "Settlement Agreement"); *see also* Complaint ¶ 11. It provided that (1) Scroggins would dismiss the Eastern District lawsuit "with prejudice," Agreement ¶ 1; (2) Scroggins, for the three-month period

---

[1] The facts related herein are drawn primarily from Scroggins's Complaint, Dkt. 2, and the materials it references. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). The Court accepts all factual allegations in the Complaint as true, drawing all reasonable inferences in Scroggins's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). With respect to UMG's Rule 12(c) motion for judgment on the pleadings, the Court draws, as it may, from "the complaint, the answer, [and] any written document attached to them[.]" *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009).

2

commencing on November 1, 2012, could pursue licensing royalties, "past, present and future" for the song "UFO," and would split any recovery equally among herself, Renee, and Valerie's daughter, Chistelle Polite, *id.* ¶ 2; (3) after that period, these parties, if they chose, could negotiate a possible extension to the royalties arrangement, *id.* ¶ 3; and (4) these parties would exchange mutual general releases of all claims "from the beginning of time to the date of this agreement," *id.* ¶ 4.

Scroggins now alleges, however, that when she tried to enforce the Agreement, she learned that Fire Records had "fraudulently [and] illegally" obtained the rights to ESG's works from Renee and was consequently "the one doing ESG's licensing[.]" Complaint ¶¶ 15–16. Scroggins then sent a cease and desist letter to Fire Records, stating that Fire Records did not have her permission to use any songs on the EP Album, Disco Album or the LP Album. *Id.*, Exs. 7–8. Despite lacking permission from Scroggins, Fire Records continued to use the ESG songs. *Id.*, ¶ 16. As to other defendants here, Scroggins alleges that UMG infringed her copyright to "UFO," *see id.* ¶¶ 17–18, Ex. 9, and that ASCAP "illegally with[held] [her] royalty payments" for the songs from the albums that she claims to have registered with it, *see id.* ¶¶ 19–20.

After failing to obtain licenses or collect royalties under the Settlement Agreement, Scroggins moved to reopen the Eastern District action. Complaint ¶ 13. The district court there, however, denied that motion, because it had not retained jurisdiction to enforce the Agreement. Dkt. 27, Ex. D. The district court clarified for Scroggins that it had never issued any ruling "addressing whether [Scroggins] was a valid co-author of [ESG's] songs or whether she was entitled to a portion of the royalties"; any right to royalties on Scroggins's part was therefore "pursuant to the private settlement agreement that she reached with her sisters." *Id.* Scroggins

3

appealed the denial of her motion to reopen, but the Second Circuit dismissed the appeal *sua sponte* as time-barred and as lacking "an arguable basis in law or fact." Dkt. 27, Ex. E.

On May 11, 2015, Scroggins filed suit in New York State Supreme Court (Kings County) against Renee and Valerie. Dkt. 27, Ex. F (the "State Court Complaint"). She alleged, *inter alia*, that her sisters had breached the Settlement Agreement by failing to give her certain documents and information, by failing to inform third parties of her right to collect royalties for ESG's songs, and by preventing her from collecting royalties during the three-month period when, under the Agreement, she had the right to pursue such royalties. *Id.* ¶¶ 18–20.

On December 4, 2015, Scroggins filed the Complaint in this case, a separate action. Dkt. 2. It explains that, while the State Court action sought relief from her sisters' alleged breach of the Agreement, this action brought claims of copyright infringement and of other violations of federal and state law. Complaint ¶ 14. Specifically, as developed below, the Court construes Scroggins here to assert claims for copyright infringement, fraud, theft, and defamation against Renee, Fire Records, and UMG, and to seek royalty payments from ASCAP. *Id.*

**B.    Procedural History**

On July 26, 2016, Renee filed a motion to dismiss. Dkt. 26. On August 15, 2016, Conexion filed a motion to dismiss, Dkt. 20, along with a memorandum of law in support, Dkt. 21 ("Conexion Br."). On September 2, 2016, Fire Records filed a motion to intervene and to dismiss, Dkt. 25, along with a declaration, Dkt. 26, and a memorandum of law in support, Dkt. 27. On September 9, 2016, ASCAP filed a motion to dismiss for lack of subject matter jurisdiction, under Federal Rule 12(b)(1), Dkt. 30, and a memorandum of law, Dkt. 31 ("ASCAP Br."), and affidavit, Dkt. 32, in support. On October 11, 2016, UMG answered the complaint. Dkt. 42 ("UMG Answer").

On October 11, 2016, the Court granted Fire Records's motion to intervene, and set a schedule for Scroggins either to amend her Complaint or oppose the motion to dismiss; the Court gave Scroggins, as a *pro se* litigant, extended time to do so. Dkt. 43. On November 11, 2016, Scroggins filed an opposition to the various motions to dismiss. Dkt. 46 ("Scroggins Br."). On November 18, 2016, ASCAP, Dkt. 49 ("ASCAP Rep. Br."), and Conexion, Dkt. 52 ("Conexion Rep. Br."), filed reply memoranda of law in support of their respective motions to dismiss.

On December 20, 2016, UMG filed a motion for judgment on the pleading, Dkt. 54, and a memorandum of law in support, Dkt. 55 ("UMG Br."). On December 28, 2016, the Court set a briefing schedule for that motion. Dkt. 56. The Court directed Scroggins to file any response by January 17, 2017. *Id.* Scroggins did not do so. *See* Dkt. 57.

## II. Applicable Legal Standards

The motions to dismiss implicate three distinct federal rules.

### A. Rule 12(b)(1)

In considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court must accept as true all material factual allegations in the complaint, but is "not to draw inferences from the complaint favorable to plaintiffs." *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). A court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [a court] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *McGowan v. United States*, 825 F.3d 118, 125–26 (2d Cir. 2016) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). A court properly dismisses an action under Rule 12(b)(1) if the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt*

*Street Recovery Corp. v. Hallas Telecommns. S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (internal quotation omitted).

### B. Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim for which relief can be granted under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) (internal quotation marks omitted)). However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[R]ather, the complaint's *[f]actual* allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (internal quotation marks omitted) (emphasis in *Arista Records*). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

### C. Rule 12(c)

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standard as a motion under Rule 12(b)(6). *Ades & Berg Group Investors v. Breeden (In re Ades & Berg Group Investors)*, 550 F.3d 240, 243 n.4 (2d Cir. 2008) (citing *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999)); *see also United States Life Ins. Co. v. Blum*, No. 09 Civ. 9416, 2011 U.S. Dist. LEXIS 1531, at *10 (S.D.N.Y. Jan. 3, 2011). The court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008); *see also Famous Horse Inc.*, 624 F.3d at 108. To survive a motion for judgment on the pleadings, the complaint must contain factual allegations amounting to "more than an unadorned, the-defendant-unlawfully-harmed me accusation," *Iqbal*, 556 U.S. at 678, such that those allegations, when accepted as true, "state a claim for relief that is *plausible on its face.*" *South Cherry Street LLC v. Hennessee Group LLC*, 573 F.3d 98, 110 (2d Cir. 2009) (emphasis in original).[2]

However, the rule that "a court must accept as true all of the allegations contained in a complaint" is "inapplicable to legal conclusions," even where, as here, the plaintiff proceeds *pro se*. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 678 (2009)). And, in deciding a motion for judgment on the pleadings, the Court may consider "the complaint, the answer, [and] any written document attached to them[.]" *Roberts v. Babkiewicz*,

---

[2] As to all motions, a court must construe a *pro se* plaintiff's pleadings liberally. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). "[D]ismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

582 F.3d 418, 419 (2d Cir. 2009); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

## III.    Discussion

Although far from a model of clarity, Scroggins's Complaint appears to allege claims against Fire Records and Conexion for fraud, defamation, and copyright infringement; against Renee for copyright infringement, fraud, and negligent and/or intentional infliction of emotional distress; against ASCAP for withholding of royalty payments (breach of contract); and against UMG for copyright infringement, theft (conversion), and negligent and/or intentional infliction of emotional distress. Each defendant has moved for dismissal, on various distinct grounds. The Court will address the motions by defendant.

### A.    Scroggins's Claims Against Fire Records

Scroggins alleges that Fire Records "fraudulently & illegally" obtained the rights to the "masters and publishing of all ESG works" from Renee. Complaint ¶¶ 11, 15. She also alleges that Fire Records defamed her character "by telling lies to ASCAP, BMI, UMG, JC Penney and other co's about my copyright registrations being no good ant that didn't I write any of the ESG works," *id.* ¶ 16, and wrongly collected money from its exploitation of ESG's works even after Scroggins had sent Fire Records a "cease & desist" letter, *id.* Based on this conduct, Scroggins argues, Fire Records is liable to her for fraud, defamation, and copyright infringement; she seeks $30 million in damages, and the return to her of the "Master Tapes and Intellectual Property." *Id.* ¶ 22.

Fire Records responds that none of Scroggins's claims against it states a claim. The Court reviews these claims in turn.

8

### 1. Fraud

Under Federal Rule of Civil Procedure 9(b), to plead a claim for fraud, a complaint "must adequately specify the statements it claims are false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1985). Scroggins's Complaint falls far short of this standard. It does not make any specific allegations as to how Fire Records defrauded her. And it wholly lacks the detail and particularity required by Rule 9(b). For this reason, Scroggins's fraud claim against Fire Records must be dismissed under Rule 12(b)(6).

### 2. Defamation

Scroggins's Complaint also does not plead any details supporting her defamation claim. It generally accuses Fire Records of "'telling lies to ASCAP, BMI, UMG, JCPenney and other co's." Complaint ¶ 16. The Court construes the defamation claim to accuse Fire Records of defamation by "slander," rather than by "libel," *see Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) ("slander" is spoken defamation, whereas "libel" is written defamation). The Complaint does not, however, specify—or elaborate at all on—these "lies."

To state a claim for slander, a Complaint must identify some false defamatory statement of fact that the defendant made or published to a third party, and identify (1) the content of the alleged statement, (2) when it was made, (3) who made the statement, and (4) to whom. *See Ello v. Singh*, 531 F. Supp. 2d, 552, 575 (S.D.N.Y. 2007). A mere allegation that a defendant made disparaging false statements about a plaintiff is insufficient to state a claim for defamation. *Id.*

Scroggins's Complaint fails this standard. Its general assertion that Fire Records "told lies" to various companies is the sort of unadorned blanket claim that cannot sustain a slander claim. The Court accordingly must dismiss Scroggins's defamation claim under Rule 12(b)(6).

### 3. Copyright Infringement

While stating generally that Fire Records infringed upon her rights to exploit ESG's works, Scroggins's Complaint admits that Fire Records is an "owner of masters and publishing of all ESG works." Complaint ¶ 16. That admission requires dismissal of Scroggins's copyright infringement claims against Fire Records under Rule 12(b)(6), because, under federal copyright law "a joint owner of [a] copyright and its licensees cannot be liable to a co-owner for copyright infringement." *Donna v. Dodd, Mead & Co., Inc.*, 374 F. Supp. 429, 430 (S.D.N.Y. 1974); *see Spinelli v. National Football League*, 96 F. Supp. 3d 81, 121 (S.D.N.Y. 2015) (joint-ownership or license of copyright is proper grounds for dismissal under Rule 12(b)(6)).

Thus, none of Scroggins's claims against Fire Record states a claim.

### B. Scroggins's Claims Against Conexion

Scroggins's Complaint treats Conexion as co-extensive with Fire Records, and brings the same claims against it. Confusingly, however, Scroggins does not allege *any* facts that might support a claim against Conexion. She instead implicates Conexion by naming it as a defendant as a combined entity she calls "Fire Records/Conexion Media." Complaint ¶¶ 15–16. At the same time, her Complaint acknowledges that Conexion and Fire Records are distinct entities, with the former located in Tennessee, and the latter in London, England. Complaint ¶ 1.[3]

Scroggins claims against Conexion thus fails for two reasons. First, insofar as Scroggins equates Conexion with Fire Records, her claims fail to state a claim for the same reason as do the claims against Fire Records. Second, the Complaint fails to plead facts supporting equating these two defendants. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1458 (2d Cir. 1995) (motion to

---

[3] In its brief, Conexion represents that it has no connection to Fire Records. Conexion Br. at 5.

dismiss appropriately granted "in favor of defendant parent companies where there has been a lack of sufficient evidence to place the alter ego issue in dispute").[4]

Furthermore, as Conexion notes, *see* Conexion Rep. Br. at 3, even if it had exploited ESG's works without Scroggins's permission, Scroggins's Complaint makes clear that this would have been pursuant to a license from Renee for the songs in question, *see* Complaint ¶ 16; Scroggins Br. at 8. And because the Complaint admits that Renee co-owned the copyright for ESG's songs, Complaint ¶¶ 3–4, it follows that Renee had the right to license those songs to Conexion. *See Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998) ("Joint authorship entitles the co-authors to equal undivided interests in the whole work—in other words, each joint author has the right to use or to license the work as he or she wishes . . ."). With such a license, Conexion could not be liable to Scroggins for copyright infringement. *See McKay v. Columbia Broad. Sys., Inc.*, 324 F.2d 762, 763 (2d Cir. 1963) ("[A] license from a co-holder of a copyright immunizes the licensee from liability to the other co-holder for copyright infringement").

Thus, Scroggins's claims against Conexion must be dismissed under Rule 12(b)(6).

C.   **Scroggins's Claims Against Renee**

Scroggins claims that Renee is liable to her for "violation of federal laws including copyright infringement, fraud and other laws"; these other laws appear to include negligent and/or intentional infliction of emotional distress arising out of Renee's alleged failure to pay

---

[4] As to the latter point, in opposing dismissal, Scroggins appears to concede the lack of evidence of a connection between Conexion and Fire Records. She instead seeks to resuscitate her claims by stating that "Conexion Media aka CMI America aka C minor Music was implicated as a 3rd party who had an interest in [her] songs [*sic*] registrations with ASCAP." Scroggins Br. at 7. Her support for this assertion appears to be that a person with a "conexion-entertainment.com" email address was copied on an email exchange involving her and ASCAP. *See* Dkt. 2, Ex. 10. Even if the Court were to consider this elusive new claim, it would not rescue Scroggins's claims against Conexion.

Scroggins her share of the royalties for ESG's works, and to honor the Settlement Agreement arising out of Scroggins's lawsuit in the Eastern District. Complaint ¶¶ 5–12, 14.

Scroggins acknowledges that her claims of breach of the Settlement Agreement are state law claims. *Id.* ¶ 14. Indeed, she is pursuing them in her pending case in state Supreme Court in Kings County. *Id.*

Significantly, Scroggins's remaining claims here against Renee—namely, "the violation of federal laws including copyright infringement, fraud and other laws," *id.*—duplicate the very claims that Scroggins brought against Renee in the Eastern District action which were dismissed with prejudice pursuant to the Settlement Agreement. Scroggins's claims against Renee here thus must therefore be dismissed for failure to state a claim under the doctrine of *res judicata*. Under that doctrine, a subsequent lawsuit will be barred where the defendant can show: (1) a final judgment on the merits in the previous action; (2) that the prior lawsuit involved the plaintiff or those in privity with her; and (3) that the claims asserted by the plaintiff in the subsequent suit were raised could have been raised in the prior proceeding. *See Monahan v. N.Y. City Dept. of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000).

Each of these requirements is met here with regard to Scroggins's claims against Renee. A stipulation of discontinuance with prejudice arising out of a settlement agreement operates as a final judgment on the merits for *res judicata* purposes, *see Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002); Scroggins was the plaintiff and Renee the defendant in the prior litigation, establishing privity; and the Eastern District litigation involved the same claims as here (copyright infringement, fraud, and infliction of emotional distress). *Id.*

Opposing dismissal, Scroggins states that "[r]es judicata doesn't bar anything that is not appropriate and/or unlawful," arguing that Renee's alleged breach of the Settlement Agreement

12

makes it "null and void." Scroggins Br. at 10. That is not correct, because the Agreement does not provide—and Scroggins does not claim that it provides—that upon a breach, Scroggins may pursue anew the claims dismissed with prejudice pursuant to the Agreement. As the district court in the Eastern District observed in denying Scroggins's motion to reopen the lawsuit there, her remedy for breach of the Settlement Agreement is to bring a breach of contract action, as indeed she has in state court.

The Court therefore dismisses Scroggins's claims against Renee under Rule 12(b)(6).

### D. Scroggins's Claim Against ASCAP

Scroggins asserts a single claim against ASCAP: for "illegal withholding of royalty payments." Complaint ¶ 24. As alleged, this claim stems from ASCAP's "usage of my 16 Master & Musical works including 'UFO,'" which Scroggins claims to have registered with ASCAP. *Id.* Scroggins claims ASCAP failed to pay her royalties for the public performance of ESG works to which was entitled under her ASCAP membership agreement. *Id.* ¶¶ 19–20.

ASCAP moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. It argues that (1) there is no diversity of citizenship between Scroggins and ASCAP, (2) the claim against ASCAP does not present a federal question, and (3) even if federal jurisdiction were proper over one of Scroggins's claims against a co-defendant, the Court should not exercise supplemental jurisdiction over Scroggins's claim against ASCAP.

#### 1. Diversity Jurisdiction

District courts have original jurisdiction over civil actions where the matter in controversy exceeds $75,000, and the action is between citizens of different States, 28 U.S.C. § 1332(a), such that "all adverse parties to a litigation are completely diverse in their citizenships." *Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001).

Diversity jurisdiction is lacking here because both Scroggins and ASCAP are citizens of New York. Scroggins resides in Brooklyn, Complaint ¶ 1, and is thus a New York citizen. And ASCAP, as an unincorporated membership association, is a citizen of every state in which its members reside, which includes New York. *See* ASCAP Br. at 4; *cf. Emrit v. Am. Soc'y of Composers, Authors & Publishers*, NO. CA 13-179-ML, 2013 WL 4094387 at *3 (ASCAP is Rhode Island citizen for diversity purposes because it has Rhode Island members).

### 2. Federal Question Jurisdiction

District courts have original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States, 28 U.S.C. § 1331, including "under any Act of Congress relating to . . . copyrights," 28 U.S.C. § 1338.

Although Scroggins brings copyright claims against other defendant, she does not bring such claims against ASCAP. Her claim against ASCAP is for "illegal withholding of royalty payments" relating to ESG recordings, based on ASCAP's alleged breach of its duties under the ASCAP membership agreement. Complaint ¶¶ 19–20, 24. This breach of contract claim does not implicate federal law. It is a garden-variety breach of contract claim arising under state law. Thus, the Court lacks federal question jurisdiction to hear Scroggins's claim against ASCAP.

### 3. Supplemental Jurisdiction

When determining whether to exercise supplemental jurisdiction over state-law claims, a court is to consider "the values of judicial economy, convenience, fairness, and comity." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, (1988); *accord Hedges v. Town of Madison,* 456 Fed. Appx. 22, 24 (2d Cir. 2012) (summ. order).

There is no basis to exercise such jurisdiction here. The Court is dismissing all federal claims against co-defendants for failure to state a claim. Even if this were not so, Scroggins's breach of contract claims against ASCAP are different in character from her claims against the

14

other defendants. And the Court's supervision of this case has been limited, consisting of little more than resolving the pending motions. The Court has not acquired familiarity with the facts or legal issues that may be implicated by Scroggins's breach of contract claim against ASCAP.

The Court therefore dismisses Scroggins's claim against ASCAP for "illegal withholding of royalty payments," for lack of federal jurisdiction. Scroggins is, of course, at liberty to pursue such a claim in state court.

### E. Scroggins's Claims Against UMG

Scroggins alleges that UMG infringed her copyright in "UFO" in three ways: (1) by using a sample of "UFO" in the song "Throw it Away" by the hip-hop group Slaughterhouse; (2) by using a sample of "UFO" in the song "Headgames" by the rapper Erick Sermon; and (3) by using samples of "UFO" in unidentified "Beastie Boy tracks." Complaint ¶¶ 17–18, 23. She also alleges that UMG committed "theft" and "illegal sampling of 'UFO,'" causing her "emotional distress." *Id.* ¶ 23. The Court understands Scroggins, by these latter allegations, to bring state-law claims for conversion and negligent and/or intentional infliction of emotional distress.

In moving for judgment on the pleadings, UMG responds that Scroggins's federal copyright claims with regard to the alleged uses of "UFO" fail to state a claim, as do her claims for conversion and infliction of emotional distress. For the reasons that follow, the Court agrees.

#### 1. Copyright Infringement

##### a. Slaughterhouse's "Throw It Away"

Scroggins concedes that Renee co-owns the musical works in dispute, including the song "UFO," *see* Complaint ¶¶ 3–4. As noted, "a license from a co-holder of a copyright immunizes the licensee from liability to the other co-holder for copyright infringement." *McKay*, 324 F.2d at 763. As a co-author of "UFO," Renee thus had an independent legal right to use or license use of the copyright to "UFO" as she pleased. *See Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir.

15

1998) ("Joint authorship entitles the co-authors to equal undivided interests in the whole work—in other words, each joint author has the right to use or to license the work as he or she wishes . . ."); *see also Davis v. Blige*, 505 F.3d 90, 98–99 (2d Cir. 2007) (copyright co-owners may license others to exercise their rights and assign their rights to others). Indeed, Scroggins admits that Renee assigned her rights to license "UFO" to Fire Records. Complaint ¶¶ 15–16.

The issue, then, is whether *UMG* is also a valid licensee. To its answer, UMG attached signed copies of its license agreements with Fire Records and "C Minor/Fire Records," UMG Answer, Ex. G–I. These reflect that Fire Records, after being assigned Renee's rights to "UFO," assigned to UMG both the right to use the master recording to "UFO" and the right to use the composition of "UFO" in the Slaughterhouse song, "Throw It Away." Scroggins has not disputed the existence or validity of these agreements, which involve parties other than herself. Because UMG was a rightful assignee of the rights in question, it cannot be liable to Scroggins for copyright infringement.

Scroggins separately protests the lack or amount of royalties she received from UMG as a license holder. But this factual allegation does not support a claim of copyright infringement. "Second Circuit law is clear" that "where a licensee's use of a copyrighted work is authorized by a license, any claim for unpaid royalties for that use cannot form the basis of an infringement claim." *Spinelli*, 96 F. Supp. 3d, at 125; *see also Graham v. James*, 144 F.3d 229, 236–37 (2d Cir. 1998). If UMG underpaid Scroggins royalty payments to which she was entitled for UMG's use of "UFO" in Slaughterhouse's "Throw It Away," any claim that Scroggins would have would be under state law. The Court thus grants judgment on the pleadings in favor of UMG with regard to Scroggins' copyright infringement claim relating to "UFO."

### b. Erick Sermon's "Headgames"

The Copyright Act gives copyright holders exclusive rights, including "(1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; . . . (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission." 17 U.S.C. § 106. To plead a claim for copyright infringement, a plaintiff must allege, *inter alia*, "particular infringing acts" by that defendant, and the specific rights that such acts violated. *See Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36, n.3 (S.D.N.Y. 1992*), aff'd sub nom. Kelly v. L.L. Cool J*, 23 F.3d 398 (2d Cir. 1994).

With regard to Scroggins's claims against UMG arising out of its alleged use of "UFO" in Erick Sermon's song "Headgames," Scroggins's pleadings are inadequate. Her Complaint does not allege that UMG "(i) reproduced [her] work; (ii) prepared derivative works based on [her] work; (iii) distributed copies of [her] work to the public for sale; or (iv) performed [her] work publicly." *Brought to Life Music, Inc.*, 2003 WL 296561, at *1 (dismissing complaint for failure to allege any violation of rights under 17 U.S.C. § 106). And UMG has attached to its Answer documents that demonstrate the contrary: that UMG did not release or distribute "Headgames," and therefore could not have violated Scroggins's rights. *See* UMG Answer, Exs. B–C. On the facts pled, UMG therefore is not liable for any infringement of Scroggins's rights with respect to "UFO" in "Headgames." The Court grants judgment on the pleadings to UMG on this claim as well.

### c. The Unidentified "Beastie Boy tracks"

Finally, Scroggins makes the general allegation that UMG used, and continues to use "the song 'UFO' in . . . several Beastie Boy tracks." Complaint ¶¶ 17–18, 23. Scroggins does not,

17

however, identify any such Beasties Boys song released or distributed by UMG that samples "UFO," or makes use of that song's recording or composition. This pleading is insufficient as a matter of law to plausibly plead a claim for copyright infringement against UMG. *See Kelly*, 145 F.R.D. at 26; *see also Iqbal*, 556 U.S. at 678. The Court therefore grants judgment on the pleadings in UMG's favor on this claim as well.

### 2. "Theft"/ Conversion

Scroggins next alleges that UMG is liable for "theft" and "illegal sampling" of "UFO." Complaint ¶ 23. The Court construes this as a state-law claim for conversion of a copyrighted work. *See Transcience Corp. v. Big Time Toys, LLC*, 50 F.Supp.3d 441, 456 (S.D.N.Y. 2014) ("Under New York law, conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights"). As such, the Complaint does not state a claim, because New York law does not provide for a cause of action for the conversion of copyrighted musical materials. *See Thryoff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 406 (2d Cir. 2006) ("[T]here is no cause of action for the conversion of intangibles"). This claim, too, must be dismissed.

### 3. Infliction of Emotional Distress

Scroggins alleges that UMG's allegedly unauthorized use of "UFO" has caused her "emotional distress including ongoing mental anguish, stress, anxiety and asthma attacks." Complaint ¶ 23. The Court infers that Scroggins means to plead a state-law claim for intentional and/or negligent infliction of emotional distress. But such a claim fails, because it is premised on UMG's alleged unauthorized use of "UFO," a factual allegation, which as noted, is refuted by the documents attached to UMG's Answer. Separately, even if the Complaint had adequately pled UMG's unauthorized use, the Complaint fails to allege the "extra element" necessary, in instances of copyright infringement, to support a claim for infliction of emotional distress. *See*

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004) ("[W]e take a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim"); *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 851 (2d Cir. 1997) ("An action will not be saved from preemption by elements such as awareness or intent, which alter the action's scope but not its nature."); *see also Rainey v. Wayne State Univ.*, 26 F. Supp. 2d 963, 969 (E.D. Mich. 1998) ("[T]he only substantive issue to be resolved in plaintiff's intentional infliction of emotional distress claim is whether defendants' reproduced her work without her permission [and thus the claim was preempted]"). Therefore, judgment on the pleadings is merited for UMG on this claim as well.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss Scroggins's Complaint and for judgment on the pleadings are granted.

With respect to all claims brought under Rule 12(b)(6), this dismissal is with prejudice. Scroggins has had an adequate opportunity to respond to the motions to dismiss on this ground by Renee Scroggins, Fire Records, and Conexion. And her claims against these defendants are fatally deficient, such that it would be futile to permit Scroggins to replead these claims.

With respect to Scroggins's claim against ASCAP for failure to pay the royalties required by her membership agreement, that claim was dismissed under Rule 12(b)(1), for lack of subject matter jurisdiction. Scroggins is at liberty to pursue this claim in state court.

As to Scroggins's claims against UMG, which were dismissed under Rule 12(c), based on the materials attached to UMG's Answer, it appears to the Court likely that any repled claim would be futile. However, shortly before this decision issued, Scroggins informed the Court by letter, Dkt. 58, received on March 9, 2017, that she first received on February 17, 2017 the Court's order of December 28, 2016, Dkt. 56, directing her to file any response to UMG's

19

motion for judgment on the pleadings by January 17, 2017. Scroggins's letter, however, did not articulate any basis on which she would, or could, oppose that motion, and the evidence attached to UMG's Answer—reflecting UMG's licenses as to the works in question—is formidable. However, out of solicitude to Scroggins's status as a *pro se* party, the Court will give Scroggins a limited period of time—60 days from the date of this ruling—to amend her claims against UMG so as to address the deficiencies noted above. The Court therefore grants UMG's motion for judgement on the pleadings without prejudice to Scroggins's ability, within 60 days of the filing of this decision, to amend her Complaint with regard to her claims against UMG. Upon timely receipt of such amended complaint, the Court will reopen this case for the limited purpose of resolving Scroggins's claims against UMG. For avoidance of doubt, if no amended complaint is filed within 60 days of the filing of this decision, the dismissal of Scroggins's claims against UMG will then be with prejudice to her right to amend (*i.e.*, an amended complaint against UMG will no longer be permitted).

The Clerk of Court is respectfully directed to terminate all pending motions, to mail a copy of this order to plaintiff Deborah Scroggins at her address of record, and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: March 16, 2017
      New York, New York